HARRY ELMER STICKLES, Appellee, v. FRANK EARL TOWNSEND
et al., Appellants.

WITNESSES: Attorney as Witness—Duty to Withdraw from Case.
1 The Supreme Court "much prefer that counsel should not testify
as a witness unless it is necessary, and that they should then
withdraw from the active management of the case."

DEEDS: Delivery—Evidence—Sufficiency. Evidence reviewed and
2 held to sufficiently establish the delivery of a deed to grantee.

DEEDS: Delivery—Inability of Grantor to Recall. A deed once
3 delivered cannot be recalled without the consent of the grantee.

*Appeal from Greene District Court.*—HON. M. E. HUTCHISON,
Judge.

MONDAY, OCTOBER 4, 1915.

ACTION in equity to quiet and establish title to an undi-
vided one sixth of 164 acres of land, and a lot in the town of
Jefferson, plaintiff's title to the lot being subject to a life
lease in Theresa Jane Townsend. Plaintiff, who is the appel-
lee, based his claim of title upon a certain conveyance executed
by the first three named defendants, who are the children and
devisees under the will of Reece Townsend, deceased. The
deed bears date July 10, 1906. The children named were,
prior to said conveyance, the owners in fee of a two-thirds
interest in the real estate. The defendants, except Theresa,
filed answer denying all allegations of the petition, but admit-
ting the execution of the instruments upon which plaintiff's
claim is based; they denied that delivery of same was made
as alleged and claimed that there had never been a delivery to
plaintiff. The trial court found in favor of plaintiff, and a

judgment and decree was rendered, granting plaintiff the relief prayed. Defendants appeal.—*Affirmed.*

*Church & McCully* and *A. D. Howard,* for appellants.

*H. W. Spangler* and *J. A. Henderson,* for appellee.

PRESTON, J.—There is no serious dispute between counsel as to the law of the case, and the question presented is almost entirely one of fact. Many of the facts are not disputed. The determination of the case turns on the question as to whether there had been a delivery to plaintiff of the deed which it is admitted the three other named children of deceased executed. Plaintiff contends that the deed and assignment of the one-sixth interest in the personal property were sent to him at Denver, Colorado, by A. D. Howard, who is one of the attorneys for appellants, and who was also temporary administrator and administrator with the will annexed, and who, plaintiff claims, was acting for plaintiff in this matter. It is also claimed that plaintiff returned the deed and assignment to Howard with directions to record the same. He claims that he did not know of the alleged or so-called escrow papers which defendants claim they left with Howard at the time the deed and assignment were placed in Howard's hands; and he claims that said escrow paper is an afterthought. Defendants contend that, at the same time that the deed and assignment were executed and placed in Howard's hands, they also executed and placed with him a paper, the substance of which is that the deed and assignment were not to be delivered to plaintiff until they should so direct; they contend that Mr. Howard did not send the papers to plaintiff, or if he did, he was not authorized so to do, and that, therefore, there was no delivery. Their claim now is that plaintiff, who is their half brother, was addicted to gambling and that their purpose in executing the deed and assignment was to induce plaintiff to "straighten up", as they put it, and that if he did so, the papers were to be then delivered to him. The

three defendants, grantors in said deed, and their attorney, Mr. Howard, so testify over plaintiff's objection. A strong circumstance, in our opinion, against defendants' contention at this point is that neither the deed itself nor the so-called escrow paper refer to such a matter. Some of the grantors testify that the reason they did not want the deed delivered was that plaintiff and defendant Ross Townsend had lost too much money in a business venture in which they were engaged together in Colorado a year or two after Reece Townsend died, although they attempt to explain and qualify their testimony so given. There is but little evidence in the record that plaintiff was a gambler. One of the defendants testifies that he saw him gamble, but we do not find that any date was fixed.

One of the attorneys for defendants, testifying as a witness, said that plaintiff had admitted it to him. We might say here that on the really vital points in the case the defendants rely almost entirely upon the testimony of their attorney, who was a witness, and who continued in the active management of the defense in the district court, and who has made the argument in this court.

1. WITNESSES: attorney as witness: duty to withdraw from case.

We do not wish to criticise too harshly; but under such circumstances, we much prefer that counsel should not testify as a witness unless it is necessary, and that they should then withdraw from the active management of the case. It is human nature for attorneys to be intensely interested in the result of their client's case.

As bearing upon this point, we may state that appellants' abstract contains 74 pages and there is an additional abstract of 65 pages. Substantially every page of the abstract is corrected, and there is no denial of appellee's abstract. The entire deposition of one material witness is omitted from the abstract. The argument for appellants is made without regard to the corrections in the additional abstract.

The plaintiff is a son of defendant Theresa Jane Townsend, by a former husband. Defendants Frank, Ross and Elda

are her children by deceased, Reece Townsend, who died July 1, 1906, seized of the real estate described.

2. DEEDS : delivery : evidence : sufficiency.

Deceased died testate, but his will made no provision for plaintiff except upon a contingency which did not happen. The will gave to his widow, Theresa, one third, and the undivided two thirds to his three children, Frank, Ross and Elda, share and share alike. The plaintiff had lived in the family for about twenty years, and since he was fifteen years of age, and, as we understand it, claimed to have had some agreement that he should receive a share of the estate, and threatened to contest the will on that ground. He was dissatisfied that he would get nothing under the will.

By direction of the three devisees, Mr. Howard prepared a deed of conveyance, absolute in form, to an undivided one-sixth of the real estate of which deceased died seized, but as to the lot in town,—the homestead,—subject to a life estate. This deed contains this provision: "and, whereas, it is the desire of the said Frank Earl Townsend, Ross M. Townsend, and Elda Townsend, that their brother, Harry Elmer Stickles, should own a part of the real estate belonging to said estate, and that he should receive an equal share therein with the said legatees under said will . . . this conveyance of said one-sixth interest is made to the said Harry Elmer Stickles for the purpose of making him an equal owner with the grantors in the undivided two-thirds of said real property that is left to the grantors under said last will and testament of the said Reece Townsend, and for no other purpose." This deed bears date July 10, 1906, and was signed by all the grantors named and was duly acknowledged July 14, 1906. At the same time, an undivided one-sixth interest in the personal estate was assigned by the same parties and a life lease from the three children and devisees before named was executed for the homestead, which contains the following recital, among others: "And it is further agreed that in consideration of this life lease to our said mother that said home shall remain

as it now is until the death of the said second party, at which time said home shall become the sole property of Frank Earl Townsend, Ross M. Townsend, Elda Townsend, and Harry Elmer Stickles, each to share and share alike.'' Defendants contend that the escrow paper before referred to was executed at the same time. As stated, this last proposition is denied by plaintiff, who says he never heard of it until a year or two afterwards, and there are other circumstances in the case indicating that there was no such paper delivered to Howard until after plaintiff had returned the deed to Howard for recording. We shall not now attempt to refer to all these circumstances, but content ourselves with stating that, from the entire record, which we have examined with care, the weight of the evidence is against the contention of defendants that such an instrument was executed and placed in Howard's hands at the time the deed and assignment were given to Howard. The circumstances, or some of them hereinafter referred to, have a bearing upon this point. There is a conflict in the testimony as to whether plaintiff was present at the time the deed, assignment and lease were made. Plaintiff claims that after the funeral he returned home before any of the papers were drawn. On July 22, 1906, or eight days after the papers were acknowledged, he wrote a letter to A. D. Howard from Denver, Colorado, in which he stated:

"Mr. Howard, I suppose my brothers and sister have signed those papers and it was so good of them and I wish to ask you if those papers are binding or could it be taken away again should anything happen. I write you as I am very much interested. I would like you to let me know of anything that concerns me and if possible send me a copy of the papers they signed. I would not like for you to speak of this part of the letter as they might think I was a little hasty, but you know it was to my interest."

Plaintiff claims that he received the original deed in controversy and the assignment of the personal estate and that

they were in a letter from Mr. Howard dated July 25, 1906, which reads as follows:

"I enclose you herewith the papers signed by your brothers and sister, conveying to you an equal share of the estate belonging to your father, Reece Townsend. This makes you an equal owner with the others, in the estate, after the will is probated, and then the deed should be recorded. I send you these that you may know what has been done and they are now irrevocable, and you will be an equal owner with them as soon as the will is probated. You had better return them to me to keep until the proper time, and I will then have the deed recorded for you, and have the executor accept notice of the other."

Mr. Howard denies sending such a letter and denies that he sent the original deed and assignment, but says that he sent only copies of the instruments and produces what he claims is a copy of the letter he did write. There is a serious conflict in the evidence as to whether Mr. Howard did send a letter of July 25, 1906, as claimed by plaintiff. It is referred to in the record as Exhibit A, and the contention of plaintiff is that the original of such letter was attached to his first deposition, taken in Denver, Colorado, and marked Exhibit A.

August 19, 1906, plaintiff wrote Mr. Howard from Denver, as follows:

"Mr. Art Howard, Dear Sir: I wish to thank you very much for sending me those papers and also for the good work you have did for me and I will return them at once. I should have sent them to you before this, but I have been so busy and have neglected to do so. You will have them recorded and attend to my part of the business and what expense there is attached I will gladly settle. I know that you will see that everything is done according to law. It was very good of my brothers and sister to remember me as they have and I am very thankful for it. You will find those papers

and keep me posted. Respectfully, your friend, Harry E. Stickles.''

This letter is marked Exhibit EE. Mr. Howard as a witness says: "This letter 'EE' came back with these papers when he returned them to me." But, as stated, Mr. Howard claims that these were copies of the deed and assignment, while plaintiff claims they were the originals, and that, after he had himself made a copy, he returned the originals to Howard for recording.

Plaintiff testifies as a witness:

"I accepted this deed when received through the mails as a conveyance of the property it purported to convey. I thought I owned this property for two years after I received the deed. I never told A. D. Howard to withhold the deed from record. I would have sent the deed to the recorder's office myself and had it recorded if it hadn't been for Howard requesting me to send the deed to him and he would record it."

Going back to the question as to whether there was an Exhibit A, a letter from Howard to Stickles, dated July 25, 1906. The deposition of Stickles, to which the original letter marked Exhibit A was attached, was filed in the clerk's office about one P. M., November 8, 1912. Notices were sent of the filing, and Mr. Howard went to the clerk's office about one P. M., November 9th, and made an explanation of the deposition with the clerk when it was found that the letter referred to in the evidence as Exhibit A was missing. Thereafter, considerable testimony was taken as to the letter. As stated, defendants deny that such a letter was sent; but it is the claim of defendants that, if such a letter existed and was attached to the deposition, it was removed before it was sent from Denver.

Mr. Howard testifies that he did not remove the exhibit from the deposition and that it would have been impossible

to do so while he was examining the deposition, because the clerk was present all the time he was examining it. But we are satisfied from the record that such a letter was received by the plaintiff and that, when his deposition as a witness was taken, this letter was attached to the deposition and that the original deed and assignment were included therein. Witnesses in Denver, who had formerly lived in Jefferson, Iowa, and who were acquainted with the signatures of the grantors attached to the deed and with the signature of Mr. Howard, testify to seeing both the deed and the letter, and that the original letter was attached to the deposition. Without going into this matter too much in detail, the deposition of plaintiff Stickles was taken a second time at Denver and he testifies as to his acquaintance with the signature of Mr. Howard and that he had known him for twenty years; that he received the letter under discussion; that the signature to the letter was the genuine signature of A. D. Howard; that he had copies of the letter made by Miss Wells, and that Exhibit A, attached to the deposition of Spangler, is a correct copy of it; that he made comparison of the two; that he gave the original of said letter to Simonson, the notary public, when his first deposition was taken, and, the last time he saw it, it was attached to the deposition and marked Exhibit A.

Simonson, the notary, describes the letter and says he identified it by marking it Exhibit A and attached it to the deposition of Stickles and that it was forwarded by him to the clerk at Jefferson, Iowa.

Miss Wells testifies that, at the time the depositions were prepared, she made a copy of this letter for Mr. Spangler, one of plaintiff's attorneys; that the last she saw of the letter was when it was attached to the deposition of Mr. Stickles.

Spangler describes the letter, says he had it in his possession and had Miss Wells make a copy of it and that he compared the copy with the original; that he attached the copy to his deposition; says he last saw the original of the letter in the

hands of the notary and that it was attached to the first deposition of Stickles and marked Exhibit A.

Witness Ross testified that he lived at Denver, but formerly at Jefferson; had known A. D. Howard twenty-eight or thirty years and was familiar with his handwriting; saw the letter purporting to be from him to Stickles, dated July 25, 1906, on several occasions; that he was employed by plaintiff as attorney in this matter and as such attorney had the latter in his possession; that he corresponded with Howard in regard to the matter in controversy.

The clerk of court testified that when he received the package of depositions, the package was not broken.

Miss Stevenson, clerk in the office of the clerk of courts, testifies that when the package of depositions arrived she laid them on the clerk's table; that the clerk went home to do some work and that she took care of the deposition and sent notices to the attorneys; that she was in the office until five o'clock that afternoon, and between one o'clock and five, she looked through the first deposition and that she then saw the paper marked Exhibit A; that she was familiar with the signature of A. D. Howard and his signature was attached to the paper which she says was marked Exhibit A.

Plaintiff testifies that he was acquainted with the signatures of his two half brothers and his half sister, and that the signatures to the deed and assignment sent to him in Exhibit A were their genuine signatures and that the signature of the notary to the acknowledgment thereto was the genuine signature of Mr. Howard.

Plaintiff's wife testifies that she saw such instruments in her husband's possession in Denver; that a copy was made and she helped proofread the copy; that a certificate purporting to be signed by A. D. Howard and his notarial seal were affixed to such deed; and that the signatures to said documents were those of Ross, Elda, and Frank, the grantors; that she knows her husband mailed the deed and other document back to A. D. Howard.

Other witnesses testify on this matter and there are other circumstances in the case bearing upon this proposition; and, while there is a sharp conflict in the testimony as to whether

3. DEEDS : deliv-
ery : inability
of grantor to
recall.

Mr. Howard did write such a letter to plaintiff, described as Exhibit A, enclosing therein the original deed and assignment to plaintiff, we are satisfied that the weight of the evidence sustains plaintiff's contention that such a letter was sent and that the documents were enclosed therein; and, furthermore, the trial court, having seen the witnesses and their manner of testifying, so found, and we ought to, and do, give some weight to such finding. We think the weight of the evidence, when taken in connection with all the circumstances and the entire situation, shows that such delivery to plaintiff by Howard was authorized by defendants, and that it was the intention and purpose of the defendants that plaintiff should share equally with them in the property of the deceased, and, of course, if this be true, the failure of Howard to record the deed and his returning it to defendants without authority from plaintiff would not affect plaintiff's rights.

Some of the circumstances already mentioned bear upon this proposition and we shall briefly mention some of the others. All concede that before the deed was executed there was talk of making out papers so that plaintiff should share equally with the defendants, though they now say it was upon certain conditions; it is shown that there was affection between plaintiff and defendants; the deed itself expresses the purpose and intention that plaintiff should share equally, and, as before stated, is entirely silent as to the present claim of defendants that there was a parol understanding that this should be upon condition that plaintiff should straighten up. At least two of the heirs as witnesses testified that they did not order Mr. Howard not to deliver the deed to plaintiff; they attempt to qualify this upon further examination by their counsel and in response to leading questions, but their attempted explanation or qualification is not entirely satisfac-

tory. There is evidence that, after this controversy arose, the three defendants stated that they were willing that plaintiff should have his share, though defendants deny that they so stated. Plaintiff contends that as to ·this matter Mr. Howard was acting as his attorney, and that a delivery to him by the heirs, even though Mr. Howard was then acting as attorney for all the parties interested, was good. Mr. Howard was the administrator.

We have not set out the testimony bearing upon this point and do not deem it necessary to do so, in view of our conclusion on the other points.

We are of opinion that the decree of the district court was right and it is therefore—*Affirmed.*

DEEMER, C. J., WEAVER, and EVANS, JJ., concur.

