F. A. ONTJES et al., Appellees, v. HANFORD MACNIDER et al.,
Appellees; NORTHWESTERN STATES PORTLAND
CEMENT COMPANY, Appellant.

No. 46374.

DECEMBER 14, 1943.

Smith & Beck and Senneff & Duncan, all of Mason City, for appellant.

F. A. Ontjes and Remley J. Glass, both of Mason City, and W. G. Henke, of Charles City, for appellees.

MILLER, J.— This is a phase, perhaps the closing chapter, of what has been protracted litigation. Former opinions of this court, which mark the progress of the litigation, include Ontjes v. Bagley, 1933, 217 Iowa 1200, 250 N. W. 17; Bagley v. District Court, 1934, 218 Iowa 34, 254 N. W. 26; Ontjes v. McNider, 1934, 218 Iowa 1356, 256 N. W. 277; Ontjes v. McNider, 1937, 224 Iowa 115, 275 N. W. 328; Ontjes v. MacNider, 1942, 232 Iowa 562, 5 N. W. 2d 860. The litigation was instigated by F. A. Ontjes, who is a lawyer. Originally he was named as the sole plaintiff and he has appeared throughout as counsel pro se. Later he has also appeared with other lawyers as counsel for coplaintiffs. It is contended, and there is some evidence to support the contention, that he insisted upon controlling the litigation as plaintiff. But whether or not he controlled it in law or in fact, the record is conclusive that throughout he dominated the presentation of the plaintiffs' side of the litigation.

In 1920 Ontjes had become the owner of one hundred shares of stock, par value of $100 per share, in the Northwestern States Portland Cement Company, a West Virginia corporation engaged in the cement business at Mason City, Iowa. C. M. McNider, prior to his death in 1928, had been the dominating personality in the management of this company. In 1929 it was proposed to reorganize the company as an Iowa corporation. Hanford MacNider, son of C. H. McNider, testified that the in-

heritance-tax statute in West Virginia, and its application to transfers of stock after the decease of a stockholder, constituted one of the inducements for reincorporation in Iowa. There were certain features of the proposed reorganization to which Ontjes took vigorous exception. He commenced an action to enjoin the project. A temporary injunction was granted. On appeal the order was reversed. Ontjes v. Bagley, supra, 217 Iowa 1200, 250 N. W. 17.

While the foregoing appeal was pending in this court, a controversy arose over the right of Ontjes, as plaintiff, to take the depositions of certain defendants. Resistance was made thereto. The court overruled the resistance and ordered the defendants to permit their depositions to be taken. Certiorari in this court followed and the order complained of was held to be illegal. Bagley v. District Court, supra, 218 Iowa 34, 254 N. W. 26.

In the meantime, Ontjes had filed a claim against the estate of C. H. McNider, deceased, in behalf of himself and other stockholders of the cement company similarly situated, for an aggregate sum of $2,393,143 by reason of transactions of C. H. McNider, while an officer of the cement company, in the purchase of stock in other independent cement companies, and the payment to McNider by the cement company of excessive salaries and bonuses. Ontjes attempted to join other parties defendant and other issues with the claim in probate. Defendants moved to strike and dismiss the count of the petition which undertook to join the other parties and the other issues with the claim against the estate. The motion was overruled. On appeal the order was reversed. Ontjes v. McNider, supra, 218 Iowa 1356, 256 N. W. 277.

The claim in probate had been filed August 6, 1931. C. H. McNider had died testate on October 30, 1928. Hanford MacNider, his son, and May H. McNider, his widow, promptly qualified as executors. The claim not being filed within twelve months from the giving of notice of such qualification, the executors asserted that the claim was barred by reason of the limitations stated in section 11972, Code, 1927. Ontjes contended that the claim was not thus barred because peculiar circumstances entitled him as claimant to equitable relief. Considerable testi-

mony was taken to determine the issue of equitable relief. The court held with Ontjes and the executors appealed. This court declined to decide the issue, holding that the order appealed from was not an appealable order, but that it would inhere in any final judgment that might be entered in the trial of the claim upon its merits and might be considered and determined upon an appeal from such final judgment. Ontjes v. McNider, supra, 224 Iowa 115, 275 N. W. 328.

Thereafter a protracted trial was had on the merits. The court disallowed in its entirety the claim for $2,308,153 based upon acquisition by C. H. McNider of certain stock in LaSalle Cement Company and the Alpha Portland Cement Company from the Sandusky Cement Company and Charles Boettcher, allowed $30,014 and interest for negligent sales by McNider of Alpha Portland Cement Company stock held by Northwestern States Portland Cement Company at prices below the prevailing market price, and allowed $27,916.66 and interest for illegal bonuses and salaries paid by the Northwestern States Portland Cement Company to McNider. On appeal, the judgment was affirmed. Ontjes v. MacNider, supra, 232 Iowa 562, 5 N. W. 2d 860.

Following the affirmance of said judgment, proceedings were had for the allowance of attorney's fees and expenses from the amount recovered. The court determined that the net recovery amounted to $103,892.19 and that, from such recovery, there should be deducted and paid the following amounts: to F. A. Ontjes $20,000 for attorney's fee and $4,750 for expenses; to the estate of Ben S. Hunter $500 for attorney's fee; to W. G. Henke $9,000 for attorney's fee and $700 for expenses; to D. M. Kelleher $9,000 for attorney's fee and $350 for expenses; to F. F. Faville $5,000 for attorney's fee and $350 for expenses; to L. A. Ristau $83.15 for services as accountant. The costs of the hearing, amounting to $52.65, were also ordered paid out of the recovery. The balance of the recovery, in the amount of $54,106.39, was ordered paid to the Northwestern States Portland Cement Company of West Virginia. From this order, the Northwestern States Portland Cement Company appeals.

The only deduction which it challenges is that allowed to

Ontjes of $20,000 for attorney's fee and $4,750 for expenses. It does not challenge the amount of either allowance. It merely challenges the right or power of the court to make any allowance to Ontjes for either item. No other issue is presented by this appeal. However, so many reasons are suggested for a decision of that one issue, based upon the many implications that arise from the long and involved record of this litigation, which was incorporated into the proceedings herein, that some comment seems appropriate at this point to narrow the single issue submitted to us and to clarify the precise question presented for our decision.

The judgment against the estate of C. H. McNider has been paid, the estate has been closed, and the executors are not involved in or affected by the matter now before us. The parties stipulated, before this appeal was taken, that the Northwestern States Portland Cement Company would not appeal from any part of the court's order, except that which made an allowance to Ontjes, and that it would not challenge the amount of such allowance. Even so, it is important to bear in mind the basis for the allowance that was made.

The court allowed Ontjes nothing for fees or expenses incident to the injunction case (Ontjes v. Bagley, supra, 217 Iowa 1200, 250 N. W. 17), the certiorari action (Bagley v. District Court, supra, 218 Iowa 34, 254 N. W. 26), or the proceedings involving the joinder of actions and parties (Ontjes v. McNider, supra, 218 Iowa 1356, 256 N. W. 277). The court allowed Ontjes nothing for fees or expenses incident to the claim for $2,308,153 based upon the acquisition by McNider of stock in LaSalle Cement Company and Alpha Portland Cement Company. The fees and expenses that were allowed were those pertaining only to the recovery of $30,014 and interest based on sales by McNider of Alpha stock owned by the Northwestern and $27,916.66 and interest based on salaries and bonuses paid to McNider. Both of these claims were challenged by the executors as being barred by section 11972, Code, 1927. The litigation incident to the issue of equitable circumstances (Ontjes v. McNider, supra, 224 Iowa 115, 275 N. W. 328) was indispensable to recovery on said claims, and, of course, a substantial portion of the trial on the merits (Ontjes v. MacNider, supra,

232 Iowa 562, 5 N. W. 2d 860) pertained to and resulted in the recovery had for the benefit of the corporation.

The situation is complicated by the fact that Ontjes was named as a party plaintiff as well as an attorney of record. This is the real basis for appellant's contentions here. However, it is important to bear in mind that Ontjes acquired his stock in the Northwestern ten years before this litigation was commenced. The original acquisition of his stock had no connection with the commencement of the litigation. Also, while Ontjes dominated the presentation of the plaintiff's side of the litigation, he did so after the corporation refused to act. He attended the annual stockholders' meeting of the corporation in December 1931, and presented a resolution which would have directed the attorneys for the corporation to prosecute the claim against the McNider estate. That resolution was vigorously resisted and decisively defeated. Thereafter, Ontjes undertook to prosecute litigation which the corporation refused to prosecute, which it definitely did not want to have prosecuted, and which it persistently undertook to discourage.

An unfortunate element in the litigation, productive of intense animosity between the litigants, was the fact that the character of C. H. McNider became an issue. The $2,308,153 claim, which was ultimately rejected, would have reflected against his memory had it been established. Also, certain grounds for the claim of $30,014, relating to the sale of Alpha stock, and the claim of $27,916.66, relating to salaries and bonuses, might have constituted adverse reflections had they been established. In all of these, however, the trial court held against Ontjes and found that there was no actual fraud in the sale of the Alpha stock, and that the salaries and bonuses, though large, were in fact earned by McNider. The recovery allowed was, in each instance, based upon technical grounds which did not reflect upon the integrity of the deceased.

Accordingly, the actual allowance to Ontjes for fees and expenses was based, primarily, upon these facts. Ontjes, a lawyer, had been for ten years the owner of stock in the Northwestern Company of the par value of $10,000. He discovered facts which led him to believe that, for technical reasons, the estate of C. H. McNider was indebted to the corporation for a

substantial sum of money. Ontjes advised the corporation of the grounds for thus believing that a recovery could be had and proposed a resolution that would have required prosecution of the claim against the estate. The majority stockholders refused to take such action. Ontjes, as a minority stockholder, prosecuted the claim and, after long and bitter legal encounters, recovered over $100,000 for the corporation. He acted as attorney and incurred expenses. The corporation profited therefrom. The court awarded him a fee for his services, and reimbursement for his expenses in those instances that produced benefit to the corporation, each to be paid from the recovery that was had.

It is often true of men who act aggressively and with determination that when they prove to have been right they receive praise for courageous, persistent perseverance which has finally prevailed, but when they prove to have been wrong they receive condemnation for unreasonable, stubborn bullheadedness which has led at long last to bitter defeat. So it is with Ontjes here. His counsel extol him for his courageous, persistent perseverance which has produced a recovery for the benefit of the corporation of over $100,000. Counsel for appellant, however, challenge the holding of the trial court that the things which Ontjes did right can be considered separately from those that he did wrong, and condemn him for unreasonable, stubborn bullheadedness which complicated and prolonged the litigation and led in the end to bitter defeat upon the principal part of that for which Ontjes was fighting over a period of a dozen years. Appellant contends that the things in regard to which Ontjes was proven to be wrong so permeate and contaminate the whole picture that he should be denied any consideration whatever for those things wherein he was ultimately sustained.

The trial court refused to be driven to the harsh result for which appellant contends, took into consideration those features of the litigation wherein Ontjes was discredited and defeated, cast upon him the full burden for such, and, in substantial measure, penalized him and reduced the benefits which would otherwise have been his for those features of the litigation wherein he ultimately prevailed. Appellant makes no challenge to the fairness of such apportionment, insisting only that Ontjes

can have nothing at all. It is a harsh result for which it contends and should be reached, if at all, only because the law demands it. We are unwilling to so hold. We prefer to sustain the trial court.

Appellant asserts five propositions as reasons for reversal herein. As above stated, most of them are based primarily upon the fact that Ontjes was named a party plaintiff and appeared as attorney pro se. Many of the authorities relied upon are not in point and are not persuasive because of the anomalous situation presented by the fact that this is a suit by a minority stockholder for the benefit of the corporation. While Ontjes was named as plaintiff, the recovery belongs to the corporation. Also, in appearing as attorney, while he represented the interests of the corporation and theoretically was attorney for the corporation, the personal mutual trust and confidence, basically the foundation for the normal relationship of attorney and client, were conspicuously absent. There was open, violent hostility between Ontjes and his theoretical client, the corporation.

I. Appellant contends that the relationship of attorney and client is dependent upon contract, express or implied, and that since Ontjes, as attorney for himself, could not contract with himself, there was no such relationship here. But in a stockholders' suit such as this the relationship is superimposed by law and is not based on contract.

In Graham v. Dubuque Specialty Machine Works, 138 Iowa 456, 460, 114 N. W. 619, 621, 15 L. R. A., N. S., 729, we fixed an attorney's fee in a stockholders' action for the benefit of the corporation. In discussing the relationship of the parties we stated as follows:

"But the suing stockholders had no right to enter into a contract in behalf of the corporation. * * * No such authority had been delegated to them, and the relation of agency was not to be implied from their relative situations."

Again, at page 462 of 138 Iowa, page 621 of 114 N. W., we stated:

"Nor are the expenses of litigation allowed the shareholder on the theory that he has acted as the agent of the corporation in what he has done. The action is, to all intents and purposes,

the suit of the corporation, and is for the benefit of all parties interested to protect a trust fund, and on this ground the stockholder is reimbursed from such fund for all proper expenditures made or liabilities incurred.''

And at page 463 of 138 Iowa, page 622 of 114 N. W., we stated:

''But no more than reasonable expenses, including attorney's fees, may be exacted. * * * The right to the recovery of costs at all is contingent on success in the suit. If the action is successful, the plaintiffs may recover for, or have taxed, their attorney's fees; if unsuccessful, they may not. The contingency, however, is in the right to maintain the action, for unless sufficient grounds appear, and the corporation through its officers refuses to sue, there is no occasion for the stockholder to interpose for the protection of corporate interests. The expense in such a case is that of an intermeddler. It is only when he has been an instrument for the protection of corporate interests that he can legitimately claim his expenses, and then only such reasonable expenses as the corporation must have incurred had it prosecuted the action in its own interest. The contingency of success, then, cannot be taken into account in fixing upon the compensation to be allowed plaintiff for the services rendered as an attorney; only in deciding whether any compensation whatever shall be allowed.''

The foregoing principles of law are universally recognized and applied by courts generally. See annotation 49 A. L. R. 1190. Illustrative is the case of Hutchinson Box Board & Paper Co. v. Van Horn, 8 Cir., Kan., 299 F. 424, 430, wherein Judge Phillips, speaking for the court, stated:

''Appellants' third contention is that the court erred in allowing attorney's fees. They predicate this upon the proposition that appellee is only entitled to reimbursement for attorney's fees and expenses actually paid out, and that it affirmatively appears, from the contract above referred to and the evidence of Malloy, appellee has not paid out anything on account of attorney's fees. This contention appears to us to be unsound. All of the authorities are agreed that the amounts of attorney's fees recoverable in such cases are not to be measured

by what the plaintiff has expended or contracted to expend, but are limited to the reasonable value of the services, and are contingent upon the success of plaintiff's action. This is true because the plaintiff has no authority to contract in behalf of the corporation for the payment of counsel fees and other expenses. The theory upon which the attorney's fees are allowed is that, if the action is successful and the corporation has been benefited, it should pay the reasonable value of the services rendered it. Under this theory the corporation which received the benefit of the attorneys' services in this case ought to pay the reasonable value thereof.''

The law is well settled that there is no contractual basis for the award of attorney's fees or expenses to Ontjes. The contention of appellant, based upon the proposition that such right of Ontjes is dependent upon a contract, has no merit.

■ II. Appellant contends that Ontjes should be denied an allowance because he had no outlay for attorney's fees. This contention is fully answered by the quotation from the Van Horn case, supra. The allowance is not based on outlay. It is based solely upon the reasonable value of services rendered in an action that has been successful and from which the corporation, after refusing to act, has benefited. The cases relied upon by appellant are not in point. The contention has no merit.

■ III. Appellant contends that Ontjes was his own lawyer and that public policy forbids an allowance from the fund in court for his attorney's fees. Reference is made to a dispute in the evidence over an alleged conversation between Ontjes and Hanford MacNider at the time the injunction suit was commenced from which appellant would deduce that Ontjes offered MacNider his stock and by implication threatened to make it expensive for him if he did not buy him out. However, no fees were allowed for the injunction case and this disputed conversation is not tied up with the matter now before us.

It is also contended that to allow Ontjes an attorney's fee would encourage a lawyer who is a stockholder to commence litigation for the primary purpose of gaining attorney's fees. We do not so interpret the record. Nor do we think that such encouragement is apt to spring from the experience had herein.

As above stated, to recover fees at all it must be shown, in actions such as this, that the action is well grounded; the corporation must have refused to act; the action must be prosecuted to a successful conclusion, and then only a reasonable attorney's fee can be allowed; the allowance is made by the court and is commensurate with the benefit received by the corporation. Here most of the services rendered by Ontjes produced no such benefit. He was allowed nothing for them, stood the loss personally. The court found that the services which resulted in a benefit to the corporation, if figured on a per diem basis, would have produced a sum in excess of what the court considered reasonable in view of the results obtained. The conclusion seems inescapable that, if Ontjes undertook the litigation for the purpose of laying a foundation for attorney's fees, the venture was quite unprofitable.

It is difficult to be specific with such a mass of facts as here presented. The fee allowed seems large. But the trial on the merits in the district court consumed seven months. There were over four thousand exhibits, over six thousand pages of transcript. Months of preparation preceded the trial. Such a trial is something of an ordeal. Even when successful, it can raise havoc with a lawyer's practice. When it is unsuccessful, it can be disastrous. There had been a three weeks' trial on the issue of equitable circumstances. There had been four appeals to this court. Another protracted appeal, requiring two years of effort just to get the record made and the briefs on file, followed. This is the sixth time Ontjes has been before this court in the past eleven years during the course of the litigation. The loss imposed upon Ontjes, for that part of the litigation which was unsuccessful, is substantial. The experience had herein should be a serious deterrent, certainly not much of an inducement, for future ventures of a similar character.

The other lawyers, whom Ontjes invited to be associated with him in this litigation, have been awarded substantial sums and have been paid. Under the authorities reviewed they were clearly entitled to fees. The allowances are not disputed here. Is Ontjes required to suffer the entire burden of his time and effort without any compensation merely because he was the instigating stockholder? As a stockholder he could make no con-

tract that would bind the corporation. Any expense he incurred was at his peril. Any right to reimbursement depended upon the success of the venture and the discretion of the court after success was obtained. What basis can there be for saying that, in this unusual type of litigation, it is fatal to an attorney to participate if he is a stockholder?

IV. The usual status of attorney and client does not exist herein. The cases that discuss that usual status are not in point. Counsel have furnished us no authorities squarely in point. Diligent search has revealed none. Appellant contends that Ontjes, as instigating stockholder, stood in a position analogous to that of a trustee. Cases upon that question, that seem to be analogous, support the trial court.

In the Restatement of the Law, Trusts, section 242, comment *d,* it is stated:

"*d. Extra services.* In the absence of a statute providing a definite rule fixing the amount of the trustee's compensation, a trustee who renders professional or other services not usually rendered by trustees in the administration of the trust, as for example services as attorney or as real estate agent, may be awarded extra compensation for such services. In fixing the amount of such compensation the court will allow an amount which under all the circumstances it considers to represent the fair value of the services."

There are cases that seem to be contrary to the foregoing pronouncement. A case that reviews the division of authority and announces principles that seem to be applicable herein is Norris v. Bishop, 207 Ky. 621, 622, 269 S. W. 751, 752, wherein the court states:

"The reasonableness of the fee is not attacked, but it is insisted that no allowance whatever should have been made to the trustee for the services that he performed as attorney. Many of the courts take the position that an executor, administrator or trustee, who is also an attorney, is not entitled to extra compensation for the services which he renders as an attorney in the administration of the estate. [Citing cases.] And we have applied the same rule in the case of an assignee for the benefit

of creditors. Kentucky National Bank v. Stone, 93 Ky. 623, 20 S. W. 1040. The reason for the rule is, that a trustee cannot be expected to exercise the same prudence and foresight in employing himself that he would exercise in the employment of another, and he should not be subjected to the temptation of being ignorant as trustee in order that he may consult himself as attorney and profit by his wisdom in that capacity. On the other hand, many of the courts hold that where a trustee renders professional services for the benefit of the estate he is entitled to compensation therefor. In such a case the rule is not to allow him the usual professional charges for such services, but a compensation fixed and determined according to what is fair and reasonable in view of all the circumstances. [Citing cases.] These cases do not recognize any right to compensation based on the contract of employment or agreement as to the amount of the fee, but proceed on the theory that the question of compensation is solely for the courts, and may be made in cases where legal proceedings necessary for the protection of the estate and such as a prudent man would institute in a matter affecting his individual interests, are undertaken and conducted in good faith. * * *

"In the case at bar there were three trustees who served without compensation, and no allowance was asked or granted for professional services rendered in the administration of the trust estate out of court. The compensation was allowed solely for services rendered in defending the suit to set aside the trust. The trustees would have been recreant to their duty if they had permitted judgment to go by default. In making defense, the trustees had no personal interests to subserve. The professional services were rendered not in behalf of the trustees, but in behalf of the beneficiaries of the trust, and between them and the trustees there was no conflict of interests. As the defense was undertaken and conducted in good faith, and the whole matter of compensation is one for the court, it seems to us that the case falls within the exception, and that there is no rule of public policy that forbids a reasonable allowance for the professional services rendered."

It seems to us that the situation above reviewed is analogous

to that now before us. The Kentucky court recognized that its former decision in reference to an assignee for the benefit of creditors seemed adverse, but that case was distinguished and a fee was allowed. The reasons given for allowing a fee there are persuasive indeed for the allowance of one here. There, as here, the reasonableness of the fee was not attacked, the contention being that no fee whatever could be allowed. There, as here, the services rendered by the attorney were legal services which a layman could not render and were distinct from those of a fiduciary. There, as here, the fee was not fixed by contract but by the court and solely upon the basis of what was fair and reasonable in view of all the circumstances. There, as here, the services were not rendered for the personal benefit of the fiduciary but for the beneficiaries of the trust. No rule of public policy forbade such a fee. It would seem to follow that public policy does not forbid the allowance of a fee to Ontjes herein.

The Kentucky court indicated that it might not follow the rule announced in the Restatement by the American Law Institute above quoted. Even so, a fee was allowed where the circumstances were analogous to those now before us. When we add the authorities which support the position of the American Law Institute our decision does not seem difficult.

Both sides cite to us our decision in the case of In re Estate of Carmody, 163 Iowa 463, 467, 468, 145 N. W. 16, 17, wherein we state:

"But for the statute authorizing an allowance to an executor or administrator of compensation for extraordinary services actually rendered and necessary for the protection of the estate there would be ground for the contention that no allowance should be made for services rendered by executor or administrator, as an attorney, on the theory that a trustee can be permitted to make no profit out of his office and should not be placed in a position where his interest may be opposed to his duty. [Citing cases.] * * * Services exacting professional skill are not such as an executor or administrator ordinarily is capable of rendering and are uniformly ranked as extraordinary within the meaning of that term as used in the statute."

The foregoing decision pertains to fiduciaries created by statute, whose rights and duties are defined by statute. Accordingly, the language is not controlling here. Also, there appears to be a clear suggestion that where, as here, there is no conflict of interest and the professional skill employed is not that which the fiduciary would be expected to have, the services would be the proper subject for compensation. Here Ontjes' services, for which he seeks compensation, were rendered for the benefit of the corporation. His professional services required skill other than such as a layman as instigating stockholder would possess. The services were not those to be expected from a stockholder. If the corporation were to distribute the final net recovery of $54,106.39 among the stockholders as a dividend, Ontjes' proportionate share would be approximately $1 per share, or a little more than $100. His services were clearly for the benefit of the corporation rather than for himself as a stockholder. The corporation has been benefited. The fund it is to receive should bear the burden of a reasonable compensation to Ontjes for the services he rendered in producing it.

V. Finally, it is contended that Ontjes violated the proper concept of a lawyer's position and conduct and should not now be compensated for having done so. This contention has caused us some concern.

The basis for the first charge of unprofessional conduct is that stockholders who later joined Ontjes as plaintiffs did so at his solicitation. Considerable correspondence was introduced, written after the claim had been filed against the McNider estate, asking for contributions toward the expense of prosecuting the claim. One letter stated:

"A large number of stockholders contributed to the audit on the basis of 25¢ per share on their old stock. They sent in $711.87."

Another letter stated:

"The case is in behalf of the company and its stockholders and each stockholder has a right to join and participate in the recovery. In view of the above claim on the part of the defendants it is well for a very large number of stockholders to join for their own interest, and for moral effect in the case.

"I am enclosing a blank for that purpose. Quite a large number of stockholders have joined already. The case involves about $50.00 per share on the old stock.

"As stated in a previous letter, there will be no attorneys' fees unless recovery is made and in such event the court will fix a reasonable fee for the stockholders' attorneys to be paid out of the recovery.

"I feel very confident of a favorable result."

In the early case of Boardman & Brown v. Thompson, 25 Iowa 487, in an elaborate opinion by Judge Wright, this court held that a contract of an attorney that produced champerty and maintenance would be declared void as against public policy. See, also, Cochran v. Zachery, 137 Iowa 585, 591, 115 N. W. 486, 16 L. R. A., N. S., 235, 126 Am. St. Rep. 307, 15 Ann. Cas. 297. However, we have held that only a party to the contract can challenge it as champertous. Vimont v. Chicago & N. W. Ry. Co., 69 Iowa 296, 22 N. W. 906, 28 N. W. 612. Here there was no contract for attorney's fees and could be none. The solicitation related only to costs and pertained to an action then pending. A somewhat similar situation, where there was also a contract for an attorney's fee, was held not to be champertous. State ex rel. Gibson v. American Bonding Co., 212 Iowa 1052, 1061, 237 N. W. 360. We do not think that the letters of Ontjes to the stockholders were sufficient to forfeit his right to an attorney's fee or expenses herein.

The other claim of misconduct is based upon the fact that Ontjes knew he was to be a material witness and would give testimony, did in fact testify at each hearing in court, and still continued to be the most active advocate in the case. We have held repeatedly that when a lawyer is also a material witness in litigation he should withdraw from its prosecution or defense. Alger v. Merritt, 16 Iowa 121, 128, 129; Flood v. Bollmeier, Iowa, 138 N. W. 1102, 1104; Stickles v. Townsend, 171 Iowa 697, 699, 154 N. W. 307. The criticism herein is well taken. Often the fact that the lawyer is a witness is used as ground for discrediting his testimony. Except in a case of merely formal testimony or in an extreme case where, through surprise, the urgency of the client's interests demands such conduct, the practice has been

sharply criticized. We do not wish to appear to condone it here. However, the weight or credibility of Ontjes' testimony is not involved herein. Were the question of the amount of his fee before us, we might be disposed to consider such conduct in fixing the fee. But the parties stipulated, before the appeal was taken, and the only issue presented to us has been the single one whether Ontjes might be awarded anything at all. With the question thus limited, we are unwilling to make this conduct the basis for forfeiture of all right to compensation.

Ontjes, as appellee, has filed herein a 392-page amendment to appellant's abstract of the record and certifies that the expense of same was $347.80. Appellant has moved to strike the amendment because it is not material to the narrow issue presented by the appeal, and, as alternative relief, asks that appellee be charged with the expense thereof. The memorandum opinion of the trial court, contained in the amendment, has been helpful. Little, if any, of the rest of the amendment was necessary. It has been a burden to the record because of the limited issue before us. The motion to strike is overruled, but, as alternative relief, only $50 of the cost of such amendment will be taxed in favor of appellee. The balance of the cost of such amendment is disallowed and appellee must bear the same.

By reason of the foregoing, the order appealed from is—Affirmed.

MULRONEY, C. J., and HALE, GARFIELD, WENNERSTRUM, MANTZ, SMITH, and OLIVER, JJ., concur.

BLISS, J., takes no part.