McKENZIE *v*. GUARANTEED BOND & MORTGAGE COMPANY *et al*.

No. 6427.   FEBRUARY 23, 1929.

148

*George M. Wilson* and *Pearce Matthews,* for plaintiff.
*Morris, Hawkins & Wallace,* for defendants.

RUSSELL, C. J.   It is conceded by counsel for both parties that the only point at issue is whether the language in the original charter granted to the corporation, with reference to applying "for amendments to this charter by a vote of the majority of the stock outstanding at the time," authorized the amendment increasing the capital stock of the company, as set forth in the statement of facts. It is conceded that "the general rule of law is that such a vital, radical, and fundamental amendment as is here involved must receive the unanimous consent of the stockholders; provided there is no provision in the charter of the corporation to the contrary." It is insisted, however, by the defendants that the provision of the charter in this case, allowing amendment to the charter by a majority vote of the stockholders, takes this case out of the general rule. Counsel for the plaintiff insists that the power of amendment upon

the majority vote of the stockholders can not be held to authorize amendments which are vital, radical, or fundamental in nature. Therefore the real question at issue may be said to be whether under a reserved power to amend, if contained in the charter, as insisted by the defendants, the Guaranteed Bond & Mortgage Company is authorized to apply for, obtain, or accept an amendment which is fundamental in character without obtaining the unanimous consent of its stockholders. In other words, does the power granted the corporation in its original charter to *"apply for amendments"* to its charter, "by a vote of a majority of the stockholders outstanding at the time," include the power to make a vital, radical, or fundamental amendment to the charter by the vote of only a majority of the stockholders. It may be conceded that the charter of a corporation is a contract of a dual character. First, a contract between the State which grants the charter and the corporation; second, a contract between the corporation and its members. And while the State, in its reserved power to do so, can alter and amend the charter, and the corporation itself can not object to the alteration, even the State has no power to make any material or essential alteration in the contract between the members themselves and the corporation. *Snook* v. *Georgia Improvement Co., 83 Ga.* 61, 65 (9 S. E. 1104), and cit. It is also true that the charter limits and fixes the powers of a corporation; and in addition to the rights and privileges granted by the charter, the corporation has the powers which are common to all corporations. These common powers are set forth in the Civil Code (1910), § 2216. The method of incorporation by the superior court is set forth in that Code, §§ 2822, 2823. As to the common or general powers of a corporation, it is provided in paragraph 5 of section 2823 that corporations thus created may exercise all corporate powers *necessary to the purpose of their organization.* Among the matters required to be specified in the petition required to be filed by those seeking a charter is the amount of capital stock to be employed, as well as the particular business which it is proposed to carry on. It is to be noted that in paragraph 6 of section 2823 it is declared that the powers therein conferred shall extend to the amendment of all charters contemplated in the section. So while it does not appear in the prior decisions of this court, holding that a vital, radical, or fundamental amendment to a charter could not be legally obtained without the

unanimous consent of the stockholders, that the charters then dealt with contained a provision for amendments, we do not think that that point is important, for the reason that the language employed in the application for the charter in this case is not substantially or in any respect different from the language employed in paragraph 6 of section 2823; and yet the decisions of this court in *Atlanta Steel Co.* v. *Mynahan,* 138 *Ga.* 668 (75 S. E. 980) ; *Macon Gas Co.* v. *Richter,* 143 *Ga.* 397 (85 S. E. 112) ; *National Bank* v. *Amoss,* 144 *Ga.* 425, 431 (87 S. E. 406, Ann. Cas. 1918A, 74) ; *Johnson* v. *Tribune-Herald Co.,* 155 *Ga.* 204 (116 S. E. 810), applied the general rule that amendments to a charter, vital, radical, or fundamental in their nature, should not be permitted except upon the unanimous consent of the stockholders. In the *Richter* case, it was held that "Increasing the amount of the common capital stock in a corporation in excess of the amount authorized by the charter is a vital and fundamental change of the original contract, and requires the unanimous consent of all the stockholders." In delivering the opinion of the court Mr. Justice Hill said : "It is insisted by the plaintiffs in error that the unanimous consent of the stockholders of the Gas Company is not required in order to increase the capital stock beyond that named in the charter; in other words, that such consent is not necessary in order to obtain an amendment to the charter of a public-service corporation, for to increase the amount of the common capital stock of such a corporation in excess of the amount authorized by the charter would, in effect, be an amendment to the charter. This court has held that such an amendment to the charter of a corporation is fundamental and vital, and requires the unanimous consent of the stockholders to its acceptance. . . Increasing the capital stock of the Macon Gas Company in excess of the amount authorized by its charter would be a fundamental change of the original contract, and can not be done without the consent of all the stockholders. Morawetz on Private Corp. (2d. ed.) § 403." In the *Mynahan* case, supra, Mr. Chief Justice Fish, in holding that "When a proposed amendment to a charter is fundamental, radical, or vital, the unanimous consent of the stockholders to its acceptance is essential," cited *Winter* v. *Muscogee Railroad Co.,* 11 *Ga.* 438; *May* v. *Memphis Branch R. Co.,* 48 *Ga.* 109; *Snook* v. *Georgia Improvement Co.,* supra, *Alexander* v. *Atlanta &c. R. Co.,*

108 *Ga.* 151 (33 S. E. 866). In the *Mynahan* case, as showing that the rule is applicable alike to corporations, whether chartered by the secretary of State or by the superior court, and whether the stock be common or preferred, the court held that "An amendment to a charter of a corporation, increasing its capital stock, whether common or preferred, is fundamental. 10 Cyc. 208; Ib. 406 (g); Ib. 569 (2)." The same rule was announced in *National Bank* v. *Amoss,* and in *Johnson* v. *Tribune Herald Co.,* supra. In the case last cited, as well as in the *Mynahan* case, the proceedings involved charters granted by the superior court, as does the present case; and therefore the rule is not affected by the fact that in some of the cases cited the charters had been originally granted by the General Assembly and are now amendable by the secretary of State. In Chicago City Railway Co. *v.* Allerton, 85 U. S. 233 (21 L. ed. 902), the charter of the railway company provided that "The capital stock of said corporation shall be one hundred thousand dollars, and may be increased from time to time, at the pleasure of said corporation," and the corporation took the position that this provision conferred an unrestricted right to increase the capital stock at will, and that if an act of the legislature of Illinois, which provided that no corporation should increase or decrease its capital stock without a vote of two thirds of the stock at stockholders' meeting, were applied to this corporation, it would impair the obligation of a contract, as forbidden by the constitution. In delivering the opinion of the Supreme Court Mr. Justice Bradley said: "Without attempting to decide the constitutional question, or to give a construction to the act of the legislature, we are satisfied that the decree must be affirmed on the broad ground that a change so organic and fundamental as that of increasing the capital stock of a corporation beyond the limit fixed by the charter can not be made by the directors alone, unless expressly authorized thereto. The general power to perform all corporate acts refers to the ordinary business transactions of the corporation, and does not extend to a reconstruction of the body itself, or to an enlargement of its capital stock. . . Changes in the purpose and object of an association, or in the extent of its constituency or membership, involving the amount of its capital stock, are necessarily fundamental in their character, and can not, on general principles, be made without the

express or implied consent of the members. . . To change [the constituency, or capital and membership] without the consent of the stockholders would be to make them members of an association in which they never consented to become such. It would change the relative influence, control, and profit of each member. . . . Even when the additional stock is distributed to each stockholder pro rata, it would often work injustice, because many of the stockholders might be unable to take their respective shares, and might thus lose their relative interest and influence in the corporate concerns."

So we are of the opinion that if, as conceded, the amendment would be vital, radical, and fundamental, the court should not have allowed either of the amendments proposed to be made. We can not construe the original grant as it is construed by the learned counsel for the defendants. Nothing more was granted in the original charter than the right to *apply* for the amendment now in question. There was no grant of the power which secured such amendment at the time of granting the charter. In the petition of the original applicants for charter they ask the right to apply for an amendment which would authorize an increase in the capital stock by a vote of the majority of the stock. The right to *apply* for amendments to its charter is one of the common powers of all corporations. The request, therefore, was perfunctory. It would not follow from the fact that the court granted this request that the charter was ipso facto amended, nor would it follow that something that they asked to be permitted to apply for in the future was incorporated in the original charter. In granting the original charter the court granted the petition to the extent of saying that the corporation might apply in the future for an amendment which would authorize an increase in the capital stock by a vote of the majority of the stockholders. It was immaterial that the court did allow this portion of the petition to be incorporated in the charter, because by the very terms of the petition it was a question to be determined at some time in the future, if ever, when the application for this privilege should be presented to the superior court. The fact that the charter gave the corporation the privilege of applying for the change adds nothing to the rights inhering in any petitioner in any proceeding, but the right to make this request without showing that it had the unanimous approval of all of the

stockholders was nugatory and should have been refused. So we are of the opinion that the trial judge erred in refusing an interlocutory injunction restraining the defendants from taking any of the steps towards increasing the capital stock, either common or preferred, as set forth in the petition.

*Judgment reversed. All the Justices concur, except* HINES, J. dissenting. The petition for the charter, involved in this case, contains the provision that the applicants "desire the power and authority to apply for amendments to this charter by a vote of the majority of the stock outstanding at the time." The order of the court granting the charter provides that "said corporators and their successors are hereby clothed with all the rights, privileges, and powers mentioned in said petition." Thus the power to apply for amendments to this charter by a vote of a majority of the stock outstanding at the time was expressly conferred by the order of the court granting the charter. Under this power the corporation by a majority vote of its stockholders could apply for the amendment to its charter sought to be enjoined in this case. So I feel constrained to dissent from the judgment of the majority.