NANCY C. BISHOP, Appellee, v. MIDDLE STATES UTILITIES COMPANY of Delaware, Appellant.

No. 44519.

NOVEMBER 15, 1938.

942

C. E. Richman, and Hughes, O'Brien & Hughes, for appellant.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellee.

HAMILTON, J.—The petition is in several counts, some of which were stricken out on demurrer. The gist of the cause of action remaining is that the defendant, a Delaware corporation, authorized and empowered to do business in this state, at various times, through its authorized agents, verbally sold to plaintiff corporate stock of the defendant for which the plaintiff paid cash; that as a part of said transaction said agents verbally agreed that the defendant would repurchase said stock from the plaintiff, if plaintiff requested it at any time within three years from the date of said sale, and would pay plaintiff therefor par, less two per cent, plus earned interest to the date of purchase and would at the end of three years from the date of said purchase and at any time thereafter repurchase said stock and pay plaintiff par therefor; that plaintiff requested defendant to repurchase, buy back and purchase said stock at the same time tendering said stock to the defendant which defendant refused; on account of which plaintiff has suffered damages in the sum of $800 for which plaintiff prays for judgment against the defendant with interest and cost.

The answer of the defendant admits it is a corporation duly and legally organized under the laws of the State of Delaware

and is authorized to do business as such corporation in the State of Iowa and was so authorized including the right to sell its capital stock and other securities in this state at the time alleged in plaintiff's petition. The answer further states:

"Defendant states that its Certificate of Incorporation contains the following provisions:

" 'To purchase, hold, sell and transfer the shares of its own capital stock; provided it shall not use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of its capital.'

"That Statute 1933, section 19, page 925, chapter 65, Revised Code of Delaware, 1915, published by authority of the General Assembly, provides as follows:

" 'Corporation May Purchase, Hold, Sell and Transfer its Own Stock; Not to be Voted:—Every corporation organized under this Chapter shall have the power to purchase, hold, sell and transfer shares of its own capital stock; Provided that no such corporation shall use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of the capital of the corporation; and provided further that shares of its own capital stock belonging to the corporation shall not be voted upon directly or indirectly.'

"That said Statute at the times stated in plaintiff's petition and at the time of the incorporation of the defendant company was, and still is, in full force and effect in said state.

"That at the times herein mentioned the Courts of the State of Deleware have held and still hold that, interpreting the statute above quoted,

" 'A corporation may not use its funds or property to purchase shares of its own stock when such use will cause an impairment of its capital; that an agreement to purchase shares of stock is unlawful if the enforcement of such an agreement impaired the capital of the company; that a corporation may use only its surplus for the purchase of shares of its own capital stock;' and

" 'Any one dealing with the corporation is bound to know the limitations put on it by the statute under which it was created. In the statute the impairment of the "capital" of the company is mentioned. As here used, this means the reduction of the amount of the assets of the company below the amount

represented by the aggregate outstanding shares of the capital stock of the company. In other words, a corporation may use only its surplus for the purchase of shares of its own capital stock. ''Capital'' does not in this connection mean the assets of the company, for, of course, the assets are reduced when any of it is used by a corporation to purchase shares of its own capital stock. It must have some other meaning then. The statute must mean, therefore, that the funds and property of the company shall not be used for the purchase of shares of its own capital stock when the value of its assets is less than the aggregate amount of all the shares of its capital stock. A use by a corporation of its assets to purchase shares of its own capital stock under such conditions impairs the capital of the company.

'' 'As these conditions existed when the contract was made between Harris and the International Radiator Company, the contract is not now enforceable against the assets in the hands of the receiver, and the claim is disallowed.'

''*In Re International Radiator Company*, Court of Chancery of Delaware, October 20, 1914, 10 Del. Ch. 358, 92 Atl. 255, 256.

''Defendant avers that at the times alleged in plaintiff's petition as amended relating to a purported agreement to repurchase its own stock, that the Corporation had no surplus; that the use of its funds or property for the purchase of its own shares of capital stock would have caused an impairment of the capital of the corporation, and avers said purported agreement to repurchase plaintiff's shares of stock is unenforceable and void. Defendant further alleges that said purported agreement to purchase plaintiff's stock was and is contrary to the provisions of the Certificate of Incorporation of the corporation, contrary to the statute and law of the State of Delaware and contrary to the contract between the plaintiff stockholder and the corporation, prejudicial to the interests of other stockholders and unenforceable and void. * * * ''

To the foregoing portion of the answer quoted, the plaintiff demurred upon nine separate grounds as follows:

''1st. That such provisions, if any, have no force or effect in this state and would not be binding on plaintiff and would be no defense to her claim.

''2nd. That such provisions, if any, would be void and unenforceable.

"3rd. That the agreement made and relied upon in plaintiff's petition as amended and relied on in this case was part of the contract of purchase and would not be controlled by things claimed in the answer.

"4th. That the agreement made and relied on in plaintiff's petition as amended was the purchase of the defendant's stock and at the same time defendant agreed to return plaintiff's money any time and to do so would not be a purchase of the stock as claimed in the defendant's answer.

"5th. That the stock plaintiff purchased and which is claimed of her is not such capital stock as the defendant had described in its answer.

"6th. That the return of plaintiff's money and taking back said stock would not be impairment of the defendant's capital and would only be a return of plaintiff's money which the defendant agreed to return when she wanted it.

"7th. That such allegations so contained in said answer are immaterial to any and all issues in this case and constitute and are no defense to plaintiff's petition and cause of action.

"8th. That plaintiff demurs to each and all of the allegations of the answer complained of above for each and all of the reasons urged aforesaid, and also demurs to each and all of the allegations as a whole and to each and all of the allegations separately and apart from each other.

"9th. That defendant received and accepted plaintiff's money on the strength of the contract sued on, and having done this, it is now estopped to claim want of authority to make same or to claim that same is illegal, void, or unenforceable."

The demurrer was sustained generally.

 The defendant elected to stand on its pleading filed as ruled upon by the court on the demurrer. The answer, also, contained a general denial and, also, alleged that the agreement for the repurchase of the stock was made by the agents without authority of the company. These several defenses were not separated into divisions as is contemplated by statute. (Section 11117, Code, 1935.) A demurrer to a part only of such an answer or to a part of a single count or division of a pleading is an improper method of attack. The proper procedure would have been to require the defendant to separate and divide before demurring. (Section 11120, Code, 1935.) However, this irregularity is not

raised by the appeal and we shall give it no further consideration. The plea of estoppel in the last ground of the demurrer is, to say the least, of doubtful propriety in a demurrer. No point is made by appellant as to either of these matters. The sufficiency of the demurrer to raise the legal question of the adequacy of the pleaded defense is not questioned. The appellant being content to confine the appeal to the one question stated in his reply argument as follows:

" * * * The cause of action stated by appellee was for damages for breach of a contract of repurchase. Appellant's answer set up certain matters in defense of an action for breach of contract and appellee's demurrer to these matters was sustained. Appellant has appealed from the sustaining of the demurrer. The question before this court is whether the illegality of the repurchase contract, the underlying facts of which are admitted by appellee's demurrer, is a defense to an action for damages for breach of contract to repurchase. This court does not have before it a question as to whether such illegality of an agreement would be a defense in some other kind of an action."

There is but one error assigned and that has to do with the ruling of the court in sustaining plaintiff's demurrer to that portion of the defendant's answer which we have heretofore set out. In passing on this question, the trial court was necessarily required to look solely to the pleading and, in reviewing the matter, this court must, likewise, determine the question from the pleading. The testimony that was introduced by plaintiff after the defendant had elected to stand on its pleading, and which is brought before us by way of amendment to the abstract by appellee, can have no bearing upon the question before us. If the matters alleged in the answer which are stricken out on demurrer, if proven, would constitute a complete defense to the plaintiff's cause of action then the answer should have been permitted to stand. This is the only question properly before this court and all other questions discussed by appellee in her argument, as we view the record, are beside the point.

For the purpose of passing on this demurrer we have here a situation of a corporation without surplus. The repurchase of this stock under such circumstances would impair its capital,—a thing which is expressly prohibited by the charter or articles of incorporation and by the statutes of the State of Dela-

ware, the domicile of the company. These became a part of the contract between the parties. Graeser v. Phoenix Finance Co., 218 Iowa 1112, 254 N. W. 859.

In Ontjes v. Bagley, 217 Iowa 1200, 250 N. W. 17, this court said [page 1203 of 217 Iowa, page 19 of 250 N. W.]:

"It is well settled that the laws of the state in which a corporation is organized constitute a part of its corporation charter, and, both taken together, form the contract between the corporation and its stockholders.

"The provisions of the statute or general incorporation laws of the state in which a corporation is organized enter into and form a part of the charter. It is the rule that, in construing a corporate charter, the incorporation papers and statutes of the state of incorporation are to be construed together. The statutes need not be copied into the charter, but they form an essential part of it, and all parties are bound thereby, whether contained in the charter or only in the statutes. Statutory or constitutional provisions automatically become a part of the charter. Fletcher on Corporations, Vol. 1, sec. 164; 1 Morawetz on Private Corp. 318; Traer v. Lucas Prospecting Co., 124 Iowa 107, 99 N. W. 290; Peters v. U. S. Mortgage Co., 13 Del. Ch. 11, 114 A. 598; Detroit Mortgage Corp. v. Vaughan, 211 Mich. 320, 178 N. W. 697, 182 N. W. 526; Weede v. Emma Copper Co., 58 Utah 524, 200 P. 517; Germer v. Triple-State Natural Gas & Oil Co., 60 W. Va. 143, 54 S. E. 509."

The Constitution of the United States, section I, Article IV, provides:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." Our court has uniformly observed and enforced this provision of the Constitution. The language of the petition is: "On July 1, 1929, defendant, through its agent, verbally sold to plaintiff five shares of preferred and one share of Class A common stock of defendant for which plaintiff paid $500. That as a part of said transaction said agents verbally agreed that defendant would repurchase said stock from the plaintiff if requested and pay plaintiff par value therefor." The same language is used in other counts of the petition with the exception of the amount of stock and date of purchase. The prayer is, "that on account

of the defendant's failure to repurchase said stock plaintiff has suffered damages in the sum of $500.''

In so far as the purchase of the stock by the plaintiff is concerned, the contract was executed and she became a stockholder in the company. The agreement to repurchase remained unexecuted. There was nothing illegal in the agreement itself; the statute permitted the company to purchase its stock but it could not purchase it if the purchase resulted in the impairment of its capital and, under the construction of this Delaware statute, the purchase money would have to come out of the surplus funds of the company and, since it is revealed by the answer that the company had no surplus, the transaction falls squarely within the prohibition of the Delaware law.

Appellee has cited numerous cases in which the doctrine of ratification and estoppel has been applied by this court to defeat the claim or defense of *ultra vires* acts and contracts but in none of them has this court ever gone to the extreme of holding that a corporation could be required to repurchase its own stock where to do so would render the corporation insolvent or impair its capital structure where such act on the part of the corporation was expressly prohibited by law.

This matter comes to us on a ruling on demurrer and this court is not at liberty to exercise its inherent equitable power or adopt the appellee's dragnet theory in arguing this case and give consideration to the doctrine of estoppel, ratification, implied contract, or the theory that this was a loan or any other legal or equitable matter which might be urged in avoidance of the legal defense set up by the defendant in its answer when there is no proper pleading or proof relating to such matters before this court. The burden of plaintiff's argument goes to the proposition that this being a single entire contract and having been performed on the part of the appellee, the defendant having received the money for the stock and as a condition and inducement to the plaintiff to purchase said stock, and as a part of the consideration of said contract of purchase, agreed to repurchase the same at any time after three years at its par value; that in equity and good conscience the defendant would be estopped from setting up the defense pleaded in the answer that the contract was unenforceable and void; that having received the money even though the contract of repurchase was prohibited they

should be required to account for the money so received and plaintiff cites numerous cases where pleas of this character have been sustained by this court. Most of them, however, if not all of them, have been cases where the contract was treated as *ultra vires* and did not relate to contracts or acts that were illegal or against public policy because prohibited by statute.

■ We do not deem it advisable to intimate what our holding might be if this matter were presented to us under any of the theories suggested, or any other theory, than that presented by the ruling on this demurrer under the theory of recovery chosen by the plaintiff as disclosed by her petition. Under this record, we think the demurrer should have been overruled and the case is accordingly reversed.—Reversed.

ANDERSON, STIGER, DONEGAN, and MITCHELL, JJ., concur.