ADOLPH T. BERGER et al., appellants, v. AMANA SOCIETY et al., appellees.

No. 50349.

November 14, 1961.

Rehearing Denied January 8, 1962.

Swift & Swift, of Marengo, Edward J. Von Hoene, of Williamsburg, and Messer & Cahill, of Iowa City, for appellants.

David G. Bleakley and Harold D. Vietor, both of Cedar Rapids, and F. Paul Harned, of Marengo, for appellees.

Hays, J.—This proceedings in equity involves the validity of an Amendment to the Articles of Incorporation of the Amana Society, an Iowa Corporation, organized under the provisions of chapter 491, Code of Iowa. The Amendment in issue was adopted December 12, 1955. Plaintiffs herein, a minority group of the original Class A stockholders, seek to enjoin the Society from operating thereunder.

The Society originally was formed to aid in effectuating certain ideals in religious life, especially those relating to communistic ownership of property. In 1932 the Society reorganized under chapter 491, Code of Iowa, and renewed its charter in 1952. By such reorganization, though changes were made in the operation thereof, there was still retained the basic religious beliefs and the intent to keep the control and management of the Society in the hands of members of such Cult. Basically, this was accomplished by placing the sole voting power of the members in the holders of Class A stock. This stock, with a

par value of $50, was limited one share to a member and one vote to a share which must be cast in person. It was provided for this stock to pass to the Society upon the death or departure of the owner from the community, and for issuance of such stock to a decedent's children. It also provided for the Society, upon the acquiring such stock as above mentioned, to pay cash therefor at its book value.

Under the Amendment, now in issue, each Class A share of stock was reclassified at 100 to 1 with the requirement that each original share be exchanged for a new 100 shares having a par value of 50¢ per share. It provided for the issuance of 300,000 shares of Class B stock, par value of 50¢, and gave to such new issue, equal rights with Class A stock in the matter of voting and most other privileges. Class B stock could be freely disposed of among members or to strangers, subject only to an option in the Society, for a limited time, to purchase same. It also eliminated the requirement that the Society redeem Class A stock for cash, by requiring that redemption be made by a compulsory exchange of such stock for an equal number of Class B shares. The Amendment making the changes, above stated, and others not material here, was adopted by a two-thirds vote of the Class A stockholders attending the meeting called for such purpose in accord with section 491.20, Code of 1954.

Plaintiffs alleged in their petition that the Amendment was illegal in that it destroyed contractual rights between the Society and its Class A stockholders as to the redemption of their stock. They also alleged the adoption of the Amendment was procured by fraud, misrepresentation and coercion upon the part of the directors. Defendant by answer denied the fraud and also that such a contract, as alleged by plaintiffs, existed, but if it did it was waived. Issues being thus joined and before trial, the trial court was asked to rule upon law points presented by the pleadings under rule 105, R. C. P. The court ruled that if such contract existed, it was waived by the adoption of the Amendment in the manner prescribed in the Articles of Incorporation.

Plaintiffs were granted permission to appeal, as was defendant, under rule 332, R. C. P. Upon such appeal, this court

held plaintiffs had contractual rights to have their Class A shares of stock redeemed in cash which was so fundamental in character as to require the consent of each Class A shareowner. The trial court's ruling was reversed and the cause remanded for further consideration of remaining issues. See Berger v. Amana Society, 250 Iowa 1060, 95 N.W.2d 909, 70 A. L. R.2d 830.

Upon the remand, the defendant, by Amendment to its answer, pleaded that the contract was void as being against public policy. Plaintiffs by reply pleaded res adjudicata, citing Berger v. Amana Society, supra. The trial court, after a hearing, held the contract was void as being against public policy; that no fraud was established, and dismissed plaintiffs' petition subject to a future determination of the amount of fees to be allowed plaintiffs' attorneys for services in the appeal under rule 332. Both parties have appealed.

Two basic issues presented by plaintiffs' appeal are (1) status of our decision in Berger v. Amana Society; and (2) the establishment of fraud upon the part of the directors of the Society.

I. Was the plea of res adjudicata a good defense to the Amendment alleging the contract to be against public policy? Rule 105, R. C. P., provides: "* * * It shall enter an appropriate *final order* * * * *adjudicating the point so determined* * * *." (Italics ours.) Such a ruling is the law of the case during further proceedings in the trial in the absence of an appeal under rule 332. Litchford v. Iowa-Illinois Gas and Electric Co., 247 Iowa 947, 75 N.W.2d 346. A fortiori, a decision of this court on appeal under rule 332, and a remand for further proceedings in accord therewith, has no less status or effect. It is the law of the case upon a remand and upon further appeals to this court. Lawson v. Fordyce, 237 Iowa 28, 21 N.W.2d 69; Glenn v. Chambers, 244 Iowa 750, 56 N.W.2d 892.

The trial court does not dispute this as an abstract legal proposition, but holds that the *validity* of the contract was *not the point so determined*. The issue thus is as to the point so determined. Plaintiffs assert contractual rights based upon

the Articles of Incorporation and seek injunctive relief to protect them. Defendant states no such contract rights and also that if there be such a contract, plaintiffs waived all rights thereunder. Rule 101, R. C. P., requires that any defense in bar or abatement that a contract sued upon is void or voidable must be specifically pleaded. Rule 103, R. C. P., provides that any defense in bar or abatement shall be made in the answer or reply. In considering this rule we have held it to mean that a party to litigation may not split his cause of action and try it piecemeal; in other words, he may not present one branch of his case for the court's determination, and, when unsuccessful therein, begin over again presenting some other matter upon which he relies which might have been presented and determined theretofore. Rural Ind. Sch. Dist. v. McCracken, 215 Iowa 55, 244 N.W. 711; Lynch v. Lynch, 250 Iowa 407, 94 N.W.2d 105. This is exactly what defendant attempts to do. To say, as contended by defendant, and concurred in by the trial court, that the plea of waiver did not concede, at least under such defense—see rule 72, R. C. P.—a valid contract, is nonsense. It would reduce rule 105 to a mere means to obtain an advisory ruling and there would be no end to litigation. Defendant's attempt to switch horses at this stage of the race is untenable. Berger v. Amana Society, 250 Iowa 1060, 95 N.W.2d 909, 70 A. L. R.2d 830, determined the contract was valid. The plea of res adjudicata constituted a good defense to the Amendment and the decree of the trial court upon this issue was erroneous.

II. Does the record show fraud upon the part of the Society, acting through its directors, whereby they induced the adoption of the Amendment?

In February 1955, at the annual meeting of the stockholders of the Society, the treasurer of the Society, William F. Noe, gave a report which pictured the Society to be in dire financial distress and recommending some plan to modify the cash redemption of Class A stock, and to provide for outside management of the business of the Society and still keep control in the hands of members of the faith. At this time a special committee was appointed to formulate a preliminary

plan leading to such end. William F. Noe, treasurer, and Louis R. Marz and Harry A. Geiger, directors, were appointed. The proposed Amendment was formulated by the committee with the assistance of counsel which it employed. This was approved by the directors on October 5, 1955. As was required by section 491.20, Code of Iowa, a 60-day notice of a special meeting of the Class A stockholders was sent out on October 10, 1955, with December 12, 1955, being the date set for the meeting. Attached to the notice was a brief statement of the contents which makes no mention of the 300,000 Class B stock provision but stresses the financial status of the Society and the provision for eliminating the cash redemption feature. Also attached was a personal letter from H. G. Moerschel, President of the Society and a trustee and president of the Amana Church Society, endorsing the Amendment as a step toward bettering the financial status of the Society.

The committee arranged three special meetings of Class A stockholders to be held on October 21, 24 and 25 for the purpose of discussing this proposed Amendment. Mr. Noe and two directors attended, with Noe apparently being in charge. No official record of the proceedings at these meetings was made but it appears that Noe read, at each meeting, what was clearly a carefully prepared statement in which the financial status of the Society was stressed with emphasis upon the redemption feature. Nowhere in the paper he read is there any reference to the proposed 300,000 shares of Class B stock and its possible effect upon the future control of the Society, nor did any other director there attempt to explain it. In commenting upon the question of sale of Class A stock by the owners thereof, the statements read were clearly confusing if not deceptive. At these meetings it was mentioned that an Amendment to the proposed Amendment, dealing with issuance of Class B stock, would be offered by any stockholder, but no copy was distributed. It appears that at least four members of the Society, all being managers of stores or farms, were opposing the Amendment and circulating petitions against it. They were informed that they should not discuss it until the December 12th meeting. Doctor Moerschel, after further study of the Amendment, had

fear that under it the control of the Society might pass into the hands of strangers and wrote a letter to the stockholders to such effect. He asked permission to send it out which was refused by the directors. At the time, harsh words were exchanged and he was called a Benedict Arnold. Some of the directors arranged for a deputy sheriff to be at the December 12th meeting, trouble being anticipated.

At such meeting only Class A stockholders were admitted other than David C. Bleakley, the attorney who prepared the Amendments and who, according to the minutes gave an inspirational talk. Each stockholder signed his name as he entered the meeting. Voting was by roll call, a request for a secret ballot being voted down. A request by a stockholder to permit another attorney to be present was refused. Two requests that consideration of the Amendment and the Amendment to the Amendment, which was offered at the meeting by one of the directors, be postponed to allow further study were denied upon Mr. Bleakley's statement that such was not practical or necessary. There is a dispute in the record as to whether Mr. Bleakley, at an October meeting in response to a question as to future control of the Society, said it would not go outside or whether he said it would not so pass so long as Class A stockholders did not exchange for Class B stock, or, if having done so, did not sell it; no reference or statement as to the 300,000 Class B shares with voting rights and freedom to sell. The Amendment and Amendment thereto were adopted by a vote of 377 "yes" to 7 "no" with some "not voting."

█ The rule is well settled that directors of a corporation stand in a fiduciary relationship to the corporation and to its stockholders. While perhaps not strictly trustees, they are required to act in the utmost good faith when dealing with the stockholders. 13 Am. Jur., Corporations, section 997; Annotation, 24 A.L.R.2d 75; Gord v. Iowana Farms Milk Co., 245 Iowa 1, 60 N.W.2d 820.

█ The instant case is not the usual situation where a director has personally profited at the expense of the corporation and stockholders and damages are sought based thereon. The instant case presents a new proposition in that it is claimed, in

effect, that the directors, by taking advantage of the faith and confidence imposed in them by the great majority of Class A stockholders, procured the adoption of an Amendment to the Articles of Incorporation, which concerns the very vitals of the Society, without a full disclosure to them of the full impact thereof. It is true, as contended by defendant, that no duty rested upon the directors to do other than furnish a copy of the proposed Amendment to the voters at least sixty days prior to the voting date. Had they stopped there a very different situation might well have existed, but they did not so stop. Three meetings were called of the Class A stockholders for the stated purpose of giving them full information relative to the Amendment. One cannot read the prepared statement read at such meeting without appreciating the absence of any information upon the vital question of future control of the Society and the effect thereon of the 300,000 Class B shares of stock. Having undertaken such a duty, it was incumbent that it be performed fully and specifically. It was not so done. That a full and fair discussion of the Amendment and Amendment thereto was desired by the directors is belied by the fact that pressure was placed upon stockholders in the manager group to prevent outside discussion and petitions against adoption thereof; by the refusal of the directors to sanction a letter from Mr. Moerschel, calling attention to the chance of control passing into the hands of strangers, being sent the stockholders; by the fact that the Amendment to the proposed Amendment, which directly concerned this proposition, was not revealed until the December 12th meeting, although it was prepared and approved by the directors in November; by the fact that delay of the voting date to allow more study of the Amendment to the Amendment was denied; and by the fact that outside counsel was refused attendance at the meeting.

If dealing with the ordinary corporation for pecuniary profit, the foregoing facts might have a more insignificant meaning, but one cannot read this record and the case of State v. Amana Society, 132 Iowa 304, 109 N.W. 894, 8 L. R. A., N. S., 909, 11 Ann. Cas. 231, cited and quoted from by the trial court, without a realization of the dependency of the average Class A stock-

holder upon their leaders in matters not only spiritual but temporal. As stated in the record, but a small percentage of such stockholders have had schooling beyond the eighth grade but could intelligently vote upon the Amendment if it was properly explained to them. Equity and good conscience demand that the Amendment adopted December 12, 1955, be held to be inoperative, at least until such time as it may be adopted by the Class A voters after being fully and fairly informed thereon. State ex rel. Weede v. Bechtel, 244 Iowa 785, 56 N.W.2d 173. The trial court was in error in finding no fraud upon the part of the stockholders. By fraud we do not infer personal gain or intentional dishonesty, but perhaps an overzealous attempt to adopt the Amendment based upon the confidence knowingly placed in them, and which we think, under this record, was unduly taken advantage of. While not strictly in point, see Bosch v. Meeker Coop. L. & P. Assn., 253 Minn. 77, 91 N.W.2d 148.

III. One other proposition is presented and it concerns the order of the trial court restricting the allowance of attorney fees for plaintiffs' attorneys to services rendered on the interlocutory appeal, and reserving, for future hearing, proof as to value thereof. Plaintiffs contend error in the restriction to the interlocutory appeal only and not the entire case. Defendant asserts error in the allowance of any fees.

This action is clearly a stockholders' derivative action brought for the purpose of preserving two heretofore fundamental attributes of corporate structure, or in fact, one attribute —the keeping of the corporation a close one, by confining all corporate control in hands of members of the instant religious belief, by making Class A stockholders the speaking representatives of the faithful. While it is true the contractual right to cash redemption amounts to a benefit for the recipients thereof, of more or at least of equal importance is that, by this means, control remains in the hands of the members of the religious group. That this has been a matter of prime importance to the Society from the start thereof down to at least 1952 cannot seriously be denied. It still appears to be a prime corporate attribute, at least in the eyes of some stockholders.

388

The legal questions involved in the allowance of attorney fees in actions of this kind are fully and clearly set forth in State ex rel. Weede v. Bechtel, 244 Iowa 785, 56 N.W.2d 173, and authorities therein set forth. See also Bosch v. Meeker Coop. L. & P. Assn., 257 Minn. 362, 101 N.W.2d 423.

The trial court recognized plaintiffs' right to attorney fees for services in the interlocutory appeal even though it nullified the results thereof. Those, this court is now restoring and, in addition, has granted further relief by nullifying the Amendment in toto and thereby reserving the corporate control in hands of the Class A stockholders. The amount of fees allowable depends upon the substantial benefit gained by the corporation or its stockholders and the time and skill of the attorneys. This is a matter for the trial court to take testimony upon and determine. The cause is remanded for a decree not inconsistent herewith.—Reversed and remanded.

GARFIELD, C. J., and OLIVER, THOMPSON, PETERSON, THORNTON, and SNELL, JJ., concur.

LARSON, J., takes no part.

BLISS, J., not sitting.